UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENVILLE

JEFFERY BULLINGTON,                )
                                   )
            Plaintiff,             )
                                   )          No. 2:08-CV-122
v.                                 )
                                   )          *Mattice / Lee*
MICHAEL J. ASTRUE,                 )
Commissioner of Social Security,   )
                                   )
            Defendant.             )

## REPORT AND RECOMMENDATION

        This action was instituted by the Plaintiff pursuant to 42 U.S.C. § 405(g) seeking judicial

review of the final decision of the Commissioner of Social Security ("Commissioner" or

"Defendant") denying the Plaintiff supplemental security income ("SSI") under Title XVI of the

Social Security Act, 42 U.S.C. §§ 1381-1383f.  This matter was referred pursuant to 28 U.S.C. §

636(b) and Rule 72(b) of the Federal Rules of Civil Procedure for a report and recommendation

regarding the disposition of Plaintiff's motion for summary judgment [Doc. 8] and Defendant's

motion for summary judgment [Doc. 11].

        For the reasons stated herein, I **RECOMMEND** that: (1) Plaintiff's motion for summary

judgment [Doc. 8] be **GRANTED**; (2) Defendant's motion for summary judgment [Doc.11] be

**DENIED**; (3) the decision of the Commissioner be **REVERSED**; and (4) this matter be

**REMANDED** to the Commissioner for further administrative action, consistent with this report and

recommendation, pursuant to sentence four of 42 U.S.C. § 405(g).

## Administrative Proceedings

        Plaintiff filed an application for SSI on November 14, 2005, alleging he became disabled as

of October 27, 2005 (Tr. 67A-67C).[1]  After Plaintiff's application was denied initially and on reconsideration (Tr. 45-51, 55, 57-59), Plaintiff requested a hearing before an administrative law judge ("ALJ") (Tr. 60).  Following the administrative hearing on October 18, 2007 (Tr. 363-76), the ALJ issued a decision on December 11, 2007 (Tr. 13-24), finding Plaintiff was not disabled and denying his claim for SSI benefits.  The ALJ's decision became the final decision of the Commissioner on March 24, 2008, when the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 4-6).

## **Standard of Review**

The Court must determine whether the ALJ failed to apply the correct legal standard and whether the ALJ's findings of fact were unsupported by substantial evidence. 42 U.S.C. § 405(g) (2008); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)).  If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the Court might have decided facts differently, or if substantial evidence also would have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971).  The Court may not re-weigh the evidence and substitute its own judgment for that of the Commissioner merely because substantial evidence exists in the record to support a different conclusion.  The substantial

---

[1]  Plaintiff filed a previous application for SSI on January 20, 2004, alleging disability beginning on January 1, 2000 (Tr. 16).  The ALJ issued a decision denying Plaintiff's claim for SSI (Tr. 31-41) and the Appeals Council denied Plaintiff's request for review (Tr. 16).  No further appeal of the ALJ's February 2, 2005 decision was pursued by Plaintiff (*id.*).

evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986)). The Court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The Court of Appeals for the Sixth Circuit ("Sixth Circuit") has held that substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner*, 745 F.2d at 388 (citation omitted).

## How Disability Benefits Are Determined

The Sixth Circuit has explained the five-step procedure used by the Social Security Administration ("SSA") to determine eligibility for disability benefits as follows:

> The [Social Security] Act entitles to benefits payments certain claimants who, by virtue of a medically determinable physical or mental impairment of at least a year's expected duration, cannot engage in "substantial gainful activity." 42 U.S.C. § 423(d)(1)(A). Such claimants qualify as "disabled." *Id.* A claimant qualifies as disabled if she cannot, in light of her age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To identify claimants who satisfy this definition of disability, the SSA uses a five-step "sequential evaluation process." 20 C.F.R § 404.1520(a)(4). The five steps are as follows:

> In step one, the SSA identifies claimants who "are doing substantial gainful activity" and concludes that these claimants are not disabled. *Id.* § 404.1520(a)(4)(i). If claimants get past this step, the SSA at step two considers the "medical severity" of claimants' impairments, particularly whether such impairments have lasted or will last for at least twelve months. *Id.* § 404.1520(a)(4)(ii). Claimants with impairments of insufficient duration are not disabled. *See id.* Those with impairments that have lasted or will last at least twelve months proceed to step three.

At step three, the SSA examines the severity of claimants' impairments but with a view not solely to their duration but also to the degree of affliction imposed. *Id.* § 404.1520(a)(4)(iii). Claimants are conclusively presumed to be disabled if they suffer from an infirmity that appears on the SSA's special list of impairments, or that is at least equal in severity to those listed. *Id.* § 404.1520(a)(4)(iii), (d). The list identifies and defines impairments that are of sufficient severity as to prevent any gainful activity. *See Sullivan v. Zebley,* 493 U.S. 521, 532, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). A person with such an impairment or an equivalent, consequently, necessarily satisfies the statutory definition of disability. For such claimants, the process ends at step three. Claimants with lesser impairments proceed to step four.

In the fourth step, the SSA evaluates claimants' "residual functional capacity," defined as "the most [the claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). Claimants whose residual functional capacity permits them to perform their "past relevant work" are not disabled. *Id.* § 404.1520(a)(4)(iv), (f). "Past relevant work" is defined as work claimants have done within the past fifteen years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Id.* § 404.1560(b)(1). Claimants who can still do their past relevant work are not disabled. Those who cannot do their past relevant work proceed to the fifth step, in which the SSA determines whether claimants, in light of their residual functional capacity, age, education, and work experience, can perform "substantial gainful activity" other than their past relevant work. *See id.* § 404.1520(a)(4)(v), (g)(1). Claimants who can perform such work are not disabled. *See id.;* § 404.1560(c)(1). The SSA bears the burden of proof at step five. *See Jones v. Comm'r of Soc. Sec.,* 336 F.3d 469, 474 (6th Cir.2003).

*Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006).

## ALJ's Findings

The ALJ made the following findings in support of Commissioner's decision, which are

conclusive if they are supported by substantial evidence in the record:

1.   The claimant has not engaged in substantial gainful activity since October 27, 2005, the application date . . . .

2.   The claimant has the following severe impairments: a back disorder, obesity, and borderline intellectual functioning . . . .

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . .

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity for sedentary work which can be performed with a limited education and intellectual level (verbal [Intelligence Quotient ("IQ")] score of 85, a performance IQ score of 71, and a full scale IQ score of 76) as documented by school records . . . .

5. The claimant has no past relevant work . . . .

6. The claimant was . . . 40 years old, which is defined as a younger individual age 18-44, on the date the application was filed . . . .

7. The claimant has a limited education and is able to communicate in English . . . .

8. Transferability of job skills is not an issue because the claimant does not have past relevant work . . . .

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform . . . .

10. The claimant has not been under a disability, as defined in the Social Security Act, since October 27, 2005, the date the application was filed . . . .

(Tr. 18-20, 23-24).

## Issues

The single issue presented by Plaintiff is whether the decision of the Commissioner is supported by substantial evidence [Doc. 9 at 1]. It appears the arguments raised by Plainitff are whether the ALJ erred:(1) at step four in making his residual functional capacity ("RFC") determination, particularly, the determination as to the limitations on Plaintiff's ability to work resulting from his mental impairments; (2) in evaluating the Plaintiff's subjective complaints of disabling pain; and (3) at step five in forming the hypothetical question to the vocational expert

[Doc. 9 at 9-15].

**Review of Evidence**

**A.    *Plaintiff's Age, Education, and Past Work Experience***

Plaintiff was 42 years old at the time of the ALJ's December 11, 2007 decision (Tr. 67A). Plaintiff had a "limited education," having completed the eleventh grade, and had no past relevant work (Tr. 67D-67E, 76).

**B.    *Medical Evidence***

Only the most pertinent information will be mentioned herein as it is not necessary to summarize all of the medical evidence, most of which is not in dispute. Whether or not the medical evidence is summarized herein, however, all of the relevant medical evidence has been reviewed and considered in reaching the recommendation set forth in this report and recommendation.

School records from the Cocke County Board of Education show that on April 16, 1981, Plaintiff underwent a psychoeducation evaluation (Tr. 127-29). The tests used included the Wechsler Intelligence Scale for Children ("WISC-R"), the Bender-Gestalt test, the Draw-A-Person test, and the Wide Range Achievement Test - Reading only ("WRAT") (*id.*). On the WISC-R, Plaintiff had a verbal IQ of 85, a performance IQ of 71 and a full scale IQ of 76, which fell within the range indicating borderline mental deficiency (*id.*).

Plaintiff was seen by a psychiatrist, Sukhender Karwan, M.D., on July 23, 2004; September 23, 2004; November 3, 2004; November 23, 2004; December 23, 2004; and March 31, 2005 (Tr. 138-39, 143-47). On November 3, 2004, Dr. Karwan completed an assessment indicating his diagnosis of Plainitff was: depressive disorder, recurrent, moderate; anxiety disorder, generalized; alcohol abuse, unspecified; high blood pressure; stomach problems; headaches; and back pain (Tr. 145). Dr. Karwan found Plaintiff's global assessment of functioning ("GAF") ranged from 55 to

58 (*id.*).

Kenneth Greenwood, M.D., another psychiatrist, saw Plaintiff on December 1, 2003 and January 7, 2004 (Tr. 153-56). On December 1, 2003, Dr. Greenwood's diagnosis of Plaintiff was: major depression, recurrent, moderate; anxiety not otherwise specified; alcohol abuse; history of high blood pressure; stomach acid problems; chronic back pain; elevated cholesterol; and history of St. Vitas [sic] Dance (Tr. 155). Dr. Greenwood found Plaintiff's GAF ranged from 56 to 58 (*id.*).

Dr. Abdelraham H. Mohamed, M.D., a neurologist, saw Plaintiff on March 15, 2004; May 3, 2004; May 18, 2004; and September 9, 2004 (Tr. 216-22). On September 9, 2004, Dr. Mohamed's examination showed Plaintiff had normal muscle tone and bulk, his motor power was 5/5, and his pinprick sensation was decreased in the medial and lateral aspects of the right leg (Tr. 217). Dr. Mohamed's assessment was: (1) low back pain, (2) degenerative disease of the spine; (3) no clinical findings for an L4 radiculopathy on the right; and (4) previous electromyelogram was normal (Tr. 218).

Michael A. Chavin, M.D., saw Plaintiff on numerous occasions from July 11, 2005 to July 25, 2006 (Tr. 230-50). On July 25, 2006, Dr. Chavin's assessment was: (1) chronic intractable lower back pain, lumbar degenerative disc disease, lumbar spondylosis, and lumbar disc protrusion; (2) sacroiliac joint pain, right greater than left; (3) intermittent mid-back and neck pain; (4) poly articular joint pain with knees and elbows; (5) muscle spasm; (6) anxiety; and (7) hypertension (Tr. 230).

Wayne Page, M.D., performed a consulting physical examination of the Plaintiff for the state disability determination agency on March 27, 2006 (Tr. 253-59). On physical examination, Dr. Page described Plaintiff as alert and oriented, but uncooperative and unreliable based on the physical findings and generalized pain behaviors (Tr. 256). Dr. Page stated Plaintiff made sure he was

watching him when he got off the examination table and then stumbled (*id.*). He stated Plaintiff can lift 20 pounds on a one-time basis with both hands while standing and can lift greater than 10 pounds with both hands while seated (*id.*). Dr. Page stated Plaintiff had normal mobility, normal ability to grasp and manipulate objects and his hands were callused, contradicting Plaintiff's allegations about his activities since 2002 (*id.*). Plaintiff had 5/5 clinical strength in all groups, normal range of motion of the small and large joints of the upper and lower extremities (Tr. 257). Dr. Pages' diagnosis was: (1) low back pain and (2) hypertension, controlled (Tr. 258). Dr. Page stated Plaintiff had no impairment-related physical limitations and no other impairment-related limitations (*id.*).

Roy Nevils, Ph. D., performed a consulting psychological evaluation for the state agency on March 28, 2006 (Tr. 260-64). Dr. Nevils stated Plaintiff was generally cooperative, spontaneous, coherent, and had no evidence of thought disorder (Tr. 261). Plaintiff reported problems with anxiety (Tr. 263-64). Dr. Nevils opined Plaintiff's anxiety was due to a low sense of self-efficacy from suspected low cognitive functioning (Tr. 264). Based upon Plaintiff's academic history and mental status examination, Dr. Nevils estimated Plaintiff's mental status to be no more than mildly retarded, but stated Plaintiff required a full intellectual assessment (*id.*). Dr. Nevils stated if Plaintiff was mildly retarded, he would be expected to have substantial problems with memory and concentration in a competitive employment environment (*id.*). Dr. Nevils' diagnosis of Plaintiff was: (1) anxiety disorder, not otherwise specified; (2) mild mental retardation (provisional); and (3) a GAF of 60 (*id.*).

Nathaniel D. Robinson, M.D., completed an assessment of the Plaintiff's physical RFC for the state agency on April 3, 2006 (Tr. 265-72). Dr. Robinson indicated Plaintiff could occasionally lift and/or carry a maximum of 50 pounds, frequently lift and/or carry a maximum of 25 pounds; stand and/or walk, with normal breaks, for about six hours in an eight hour workday; and sit, with

normal breaks, for about six hours in an eight hour workday (Tr. 266).

Dr. Nevils completed a further psychological evaluation of the Plaintiff for the state agency on May 11, 2006 (Tr. 283-85). Based upon application of the Wechsler Adult Intelligence Scale – Third Edition ("WAIS-III"), the Wide Range Achievement Test - Revision 3 ("WRAT3"), and a clinical interview, Dr. Nevils diagnosed: (1) anxiety disorder, not otherwise specified; (2) mild mental retardation; and (3) a GAF of 55 (Tr. 285). Dr. Nevils stated Plaintiff's test scores on the WAIS-III and WRAT3 were considered to be a valid estimate and indicated Plaintiff performed in the moderate range of intellect overall, with academic scores suggestive of mild mental retardation (*id.*). Dr. Nevils stated, in light of Plaintiff's adaptive functioning, it was his opinion that mild mental retardation was a better representation of Plaintiff's abilities (*id.*). Dr. Nevils commented Plaintiff would be expected to have substantial problems with memory and concentration in a competitive employment environment (*id.*). Dr. Nevils also commented Plaintiff was withdrawn from crowded social situations due to his previously diagnosed anxiety disorder (*id.*). Dr. Nevils further commented there did not appear to be major problems with Plaintiff's adaptibility due to his mental disorders (*id.*).

Horace F. Edwards, Ph. D., completed a psychiatric review technique form ("PRTF") for the state agency on May 26, 2006 (Tr. 286-99). Dr. Edwards addressed two categories of mental disorder in the PRTF: organic mental disorders under listing 12.02 and anxiety-related disorders under listing 12.06 (Tr. 286). With regard to organic mental disorders, Dr. Edwards indicated Plaintiff had a medically determinable mental disorder – borderline intellectual functioning – which did not satisfy the "A" criteria of listing 12.02 (Tr. 287). With regard to anxiety-related disorders, Dr. Edwards also indicated Plaintiff had a medically determinable impairment – anxiety-related disorder, not otherwise specified – that did not satisfy the "A" criteria of listing 12.06 (Tr. 291).

With regard to the "B" criteria of these listings, Dr. Edwards indicated Plaintiff had: a mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and had experienced no episodes of decompensation of extended duration (Tr. 296). With regard to the "C" criterion of the two listings, Dr. Edwards indicated the evidence did not establish the presence of the "C" criterion of either listing (Tr. 297).

Dr. Edwards also completed a medical consultant analysis for the state agency on May 26, 2006, comparing the Plaintiff's then current medical evidence with the prior ALJ decision of February 2, 2005 (Tr. 300-03). Dr. Edwards indicated the medical evidence of record failed to support a finding of a severe mental impairment (Tr. 301). However, Dr. Edwards indicated a significant change occurred from the time of the February 2, 2005 decision by the Commissioner, as Plaintiff currently had a diagnosis of mild anxiety and the finding of borderline intellectual functioning could be supported by formal testing (*id.*). In his analysis, Dr. Edwards wrote:

> The claimant was denied by ALJ decision in 02-2005 with the final determination being the absence of a recognizable mental impairment. . . . This statement is not consistent with medical records. His performance on formal testing is not considered valid based upon his prior [testing] and his history. The primary complaints remain physical but he does appear to function in the [borderline intellectual functioning] range of intelligence with a mild anxiety component. Totality supports restrictions greater than presented by the ALJ [in the February 2, 2005 decision] but short of listing level.

(Tr. 303).

Dr. Edwards further completed an assessment of Plaintiff's mental RFC for the state agency on May 26, 2006 (Tr. 304-06). Dr. Edwards indicated Plaintiff was markedly limited in his abilities to: understand and remember detailed instructions; carry out detailed instructions; and interact appropriately with the general public (Tr. 304-05). Dr. Edwards also indicated Plaintiff was

moderately limited in his abilities to: maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; complete a normal work-day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; and set realistic goals or make plans independently of others (*id.*). Dr. Edwards further rated Plaintiff as not significantly limited in all other areas of his mental RFC (*id.*).

Treatment notes from Dr. Chavin for the period from August 22, 2006 through September 18, 2007 (Tr. 310-23), appear in the record. Dr. Chavin examined Plaintiff on September 18, 2007, based upon his history of chronic low back pain (Tr. 310). Plaintiff complained of low back pain with tingling down his right lower extremity to his toes (*id.*). Plaintiff had a normal gait and ambulated without assistance (*id.*). On examination, Plaintiff had tenderness to palpation over the posterior spine in the lumbar area and mild soreness to palpation over the lumbar facet joint and bilateral sacroiliac joint (*id.*). Straight leg raising was negative bilaterally and there was no muscle atrophy in the lower extremities (*id.*). Dr. Chavin's assessment was: (1) chronic low back pain due to lumbar spondylosis, degenerative disc disease, disc protrusion, mild facet joint pain, and mild bilateral sacroiliac joint soreness; (2) muscle spasm; and (3) anxiety (*id.*).

## C.     *Hearing Testimony*

It is not necessary to summarize all of the hearing testimony, however, all of the testimony has been reviewed and considered in reaching the recommendation set forth in this report and

recommendation.

### 1.    *Plaintiff*

Plaintiff testified as follows:  He dropped out of high school in the eleventh grade and can read and write "so-so"(Tr. 368).  When Plaintiff was a young man, he injured his back and has experienced back pain since that time (*id.*).  He can do some driving, but his legs go numb (Tr. 368-69).  Plaintiff takes pain medication daily, which makes him drowsy and causes him great difficulty in remembering things (Tr. 370-71).

### 2.    *Vocational Expert*

Vocational expert Donna Bardsley ("VE") testified as follows:  In response to a hypothetical from the ALJ involving a younger individual with the RFC to perform sedentary work and a limited education, with IQ scores of 85 verbal, 71 performance and 76 overall, the VE stated such individual could perform jobs in the regional economy (Tr. 374).  Examples of such jobs identified by the VE were:  hand packager with 400 jobs regionally and 500,000 nationally; sorter, with 325 jobs regionally and 250,000 nationally; assembler, with 300 jobs regionally and 325,000 nationally; and inspector, with 250 jobs regionally and 175,000 nationally (*id.*).  Based on the restrictions identified by the ALJ, the VE testified there were about 3,600 jobs in the region the hypothetical individual could perform (Tr. 375).  The VE also stated that if the ALJ credited the Plaintiff's testimony and found his pain was "greater than moderate," the Plaintiff's testimony would preclude all gainful employment.  (*id.*).

### <u>Analysis</u>

### A.    *Step Four – Psychological (Mental) Impairments*

"Psychological (mental) problems are non-exertional impairments which must be included in the [Commissioner's] evaluation of a claimant's limitations."  *Walker v. Bowen*, 834 F.2d 635,

642 (7th Cir. 1987). "The determination of mental RFC is crucial to the evaluation of an individual's capacity to engage in substantial gainful work activity." *Washington v. Shalala*, 37 F.3d 1437, 1440 (10th Cir. 1994) (quoting 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A) (2006)). An alleged mental impairment must be established by medical evidence consisting of clinical signs, symptoms and/or laboratory findings or psychological test findings. 20 C.F.R. pt. 404, subpt. P. app. 1, § 12.00(B) (2006); *Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

Plaintiff asserts the ALJ's RFC determination is not supported by substantial evidence because "[t]he ALJ has noted no mental limitations whatsoever in his RFC determination, other than to state Plaintiff's limited education and IQ scores." [Doc. 9 at 9]. Plaintiff also asserts "[t]he ALJ's hypothetical question to the Vocational Expert suffers the same flaws. It is impossible to determine what limitations, if any, the Vocational Expert opined would be associated with a limited education and borderline IQ scores." [*Id.*]. Plaintiff asserts the "evidence of record in this case clearly proves Plaintiff's mental impairments are more numerous and more limiting than found by the ALJ . . . ." [*Id.*]. Plaintiff contends that despite the medical evidence concerning his mental limitations, "the ALJ noted no mental limitations whatsoever . . . In reaching his RFC conclusion, the ALJ has rejected every medical opinion of record regarding Plaintiff's mental limitations." [*Id.* at 12].

The Commissioner asserts the ALJ reasonably weighed the evidence and determined the extent of the limitations to his RFC resulting from Plaintiff's mental impairments [Doc. 12 at 10]. The Commissioner asserts the ALJ's conclusion that Plaintiff could perform work which accommodated his borderline intellectual functioning is supported by substantial evidence [*id.*].

In his decision the ALJ found Plaintiff had severe impairments, including borderline intellectual functioning (Tr. 18). With regard to Plaintiff's mental impairments, the ALJ stated:

> After careful consideration of the entire record, the Administrative
> Law Judge finds that the claimant's anxiety and borderline

intellectual functioning result in mild limitations in activities of daily living, mild limitations in social functioning, and moderate limitations in concentration, persistence or pace . . .

[T]he claimant does not have a valid verbal, performance, or full scale IQ of 59 or less. Consultative psychological testing indicating IQ scores in the 50's range are inconsistent with the overall evidence of record and are not found to be reflective of the claimant's mental functional abilities. Treatment records and the claimant's adaptive functioning are more consistent with a verbal IQ score of 85 as documented by school records . . . .

As discussed below, the claimant's intellectual and adaptive functioning is consistent with school records which document a verbal IQ score of 85. While the claimant has severe physical impairments limiting him to sedentary work, he functions with a borderline intellect and is not mildly mentally retarded . . . .

(Tr. 19-20).

The ALJ then found Plaintiff had the RFC for sedentary work which can be performed with a limited education and intellectual level (verbal IQ score of 85, a performance IQ score of 71, and a full scale IQ score of 76) as documented by school records . . . . (Tr. 20). In reaching this conclusion the ALJ stated:

The evidence also establishes the claimant functions with a borderline intellect. School records document tenth grade psychological testing on which the claimant obtained a verbal IQ score of 85, a performance IQ score of 71, and a full scale IQ score of 76. On March 27, 2006, the claimant underwent a consultative psychological evaluation by clinical psychologist Dr. Roy Nevils. Mental status examination revealed some problems with memory and concentration. However, the claimant was cooperative, spontaneous, coherent, and without evidence of a thought disorder. On May 11, 2006, the claimant underwent consultative psychological testing. The claimant was correctly oriented and comprehended instructions with some difficulty at times. Dr. Nevils opined the claimant functions in the moderate range of intellect overall and would be expected to have problems with memory and concentration, but does not appear to have major problems with adaptability. While the claimant obtained a verbal IQ score of 62, a performance IQ of 55, and a full scale IQ of 55 on the Wechsler Adult Intelligence Scale-Third Edition (WAIS-III), such scores are not consistent with schools records documenting

borderline intellect or the claimant's adaptive functioning. Moreover, treatment records reveal no trauma or other event to justify a reduction in intellectual functioning. Thus, the overall evidence of record supports a conclusion that the claimant continues to function with no less than a borderline intellect.

The record does not support the claimant's allegations of total disability. . . . The claimant's anxiety is also well controlled with medication and without the need for ongoing treatment by mental health professionals. The claimant's activities include preparing sandwiches and microwave meals, watching his son play, talking on the phone with his mother and friends daily, visiting his sister daily, watching television and reading mystery novels. Such activities and abilities, particularly the ability to read mystery novels, bolster a finding that the claimant functions with a borderline intellect and retains the mental ability to perform some unskilled work. Thus, the undersigned concludes that the claimant's allegations of pain and other limiting symptoms are credible only to the extent that they are consistent with the residual functional capacity. . . .

Regarding the claimant's mental disorders, Dr. Nevils' opinion that the claimant functions overall in the moderate range of intellect and has no major problems with adaptability is consistent with the overall evidence of record including school records and the claimant's activities discussed above. However, Dr. Nevils' diagnosis of mild mental retardation is not supported by the overall evidence of record including the claimant's adaptive functioning. Further, such diagnosis is inconsistent with treatment records which evidence no trauma or other event which would cause a reduction in the claimant's intellect from borderline intellectual functioning as indicated by school records. Thus, a finding of mild mental retardation is rejected by the undersigned. The undersigned affords considerable weight to the determination by the State Agency physicians that the claimant has moderate limitations in concentration, persistence, or pace as such opinions are consistent with mental status examinations, school records, and adaptive functioning. However, the State Agency's determination that the claimant has moderate limitations in social functioning is not supported by the overall evidence of record. In making this determination, the State Agency physicians relied on Dr. Nevils' opinion of moderate limitations in social functioning which is based primarily on the claimant's subjective complaints. Thus, the undersigned rejects any conclusions that the claimant has greater than mild limitation in social functioning. . . .

The Administrative Law Judge notes that it was determined in the

previous Administrative Law Judge decision dated February 2, 2005 that the claimant could perform medium work. As previously indicated herein, . . . new evidence documents borderline intellectual functioning. Thus, moderate limitations in the ability to sustain concentration, persistence, or pace are warranted.

(Tr. 21-23).

Contrary to Plaintiff's contention, the ALJ did not find Plaintiff's mental condition did not impose any restrictions on his RFC. The ALJ found Plaintiff's severe physical limitations restricted his RFC to sedentary work (Tr. 20). The ALJ also found Plaintiff's mental impairments, his anxiety and borderline intellectual functioning, resulted in mild limitations in activities of daily living, mild limitations in social functioning, and moderate limitations in concentration, persistence or pace (Tr. 19). The ALJ then found the record, particularly the fact that Plaintiff's anxiety was well controlled with medication and Plaintiff's activities of daily living, including reading mystery novels, supported the finding Plaintiff retained "the mental ability to perform some unskilled work." (Tr. 22). The regulations define unskilled work as "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a) (2006). Thus, far from finding Plaintiff's mental impairments imposed no additional limitations to his RFC, the ALJ conclude the mental impairments further limited his RFC from the full range of sedentary work to unskilled, sedentary work.

Also contrary to Plaintiff's opinions, the ALJ did not reject all of the opinions concerning the limitations imposed by Plaintiff's mental impairments and "play doctor" by reaching his own conclusion as to the effects of Plaintiff's impairment. The ALJ credited Dr. Nevils' opinion that Plaintiff functioned in the moderate range of intellect and has no major problems with adaptability, the ALJ found, however, Dr. Nevils' diagnosis of mild mental retardation was not consistent with the overall record and Dr. Nevils' opinion that Plaintiff had moderate limitations in social

functioning, *i.e.*, more than a mild limitation in social functioning, was not supported by substantial evidence as it was based primarily on the Plaintiff's subjective complaints.

The ALJ accorded considerable weight to the determination of the state agency reviewer, Dr. Edwards, that Plaintiff had moderate limitations in concentration, persistence or pace, as his opinion was consistent with the Plaintiff's mental status examinations and school records (Tr. 23). In his mental RFC assessment, Dr. Edwards indicated Plaintiff could understand, remembers and carry out simple instructions and could sustain attention and concentration, keep to a schedule, maintain attendance and complete a workweek, but with difficulty (Tr. 306). Further, in his medical consultant analysis, Dr. Edwards indicated the evidence failed to support a finding of a severe mental impairment, but that Plaintiff functioned in the borderline intellectual range with a mild anxiety component (Tr. 301-03).

Thus, contrary to Plaintiff's contentions, the ALJ did not find Plaintiff's mental impairments had no impact on his RFC for work and in weighing the medical evidence of record, the ALJ accorded weight to portions of Dr. Nevils' opinion and Dr. Edwards' opinion, but rejected certain parts of Dr. Nevils' opinion as inconsistent with the record or based wholly upon Plaintiff's subjective complaints.

Accordingly, I **CONCLUDE** the ALJ's finding that Plaintiff's mental impairments limited him to the performance of unskilled work is not error as it is supported by substantial evidence in the record.

**B.      *Subjective Complaints/Pain Complaints***

Plaintiff also asserts the ALJ erred in evaluating his subjective complaints of disabling pain and that he suffers from numerous impairments capable of producing disabling pain [Doc. 9 at 14-15]. He asserts that when his severe pain is considered in combination with his mental impairments,

he should be found disabled [*id.* at 15].

In his decision, the ALJ discussed Plaintiff's subjective complaints of disabling pain, stating:

> The claimant alleges disability due to back, foot, and heart problems, high blood pressure, high cholesterol, and nerves. He testified that his back pain has worsened since February 2005. He testified that he can stand 30 minutes to one hour. The claimant further stated that [he] has difficulty remembering things but can socially read and write.
>
> The objective evidence established the claimant has a history of treatment for musculoskeletal pain of the spine and lower extremity due to degenerative disc disease. Examinations revealed intermittent muscle spasms, spine tenderness, some decreased range of motion of the lumbar spine, and decreased sensation on the surface of the toes and right foot at times. Otherwise, the claimant had normal pin, touch, vibration, and joint position. There was no tremor, muscle atrophy, edema, or joint swelling and no deep vein thrombosis, venous insufficiency, arterial insufficiency, or joint effusion in the lower extremities. The claimant demonstrated fine finger movements bilaterally, normal strength in both upper and lower extremities, normal station and gait, and normal coordination. Consultative physical examination by Dr. Wayne Page revealed normal range of motion of all small and large joints of the upper and lower extremities and cervical spine, normal muscle condition, and no neurological deficits. Treatment records through September 18, 2007 reflect the claimant's musculoskeletal disorders are stable with medications. The medical evidence documents obesity. On December 6, 2004, the claimant weighed 251 pounds and, on September 6, 2007, he weighed 262.6 pounds. It is reasonable to conclude that claimant's obesity adversely impacts his musculoskeletal impairments. The undersigned finds that the claimant's back disorders and obesity result in a residual functional capacity for sedentary work.
> . . .
> The record does not support the claimant's allegations of total disability. While the claimant has impairments which could reasonably be expected to cause some pain and discomfort, the level of disabling pain and other symptoms alleged are inconsistent with the overall evidence of record. Cardiovascular examinations have been entirely normal. The claimant's hypertension and hyperlipidemia are well controlled with medications and without end organ damage. The claimant's musculoskeletal disorders are stable with medications without side effects. Treatment records repeatedly document the claimant is alert and functional and is not oversedated. He has no memory impairment, nausea, vomiting, constipation,

itching, or urination retention. He does not get a high or buzz from medication. As noted by the claimant's treating physician, the claimant has improved quality of life with treatment. Further, the claimant has normal range of motion of his arms and legs and is able to stand and move about unassisted. He has no neurological deficits. While the claimant indicates a rather physically restricted lifestyle, no treating or examining source has imposed any limitations on the claimant's activities. In fact, as recently as August 22, 2007, the claimant's treating physician advised the claimant to increase his exercise. The claimant's anxiety is also well controlled with medication and without the need for ongoing treatment by mental health professionals. The claimant's activities include preparing sandwiches and microwave meals, watching his son play, talking on the phone with his mother and friends daily, visiting his sister daily, watching television, and reading mystery novels. Such activities and abilities, particularly the ability to read mystery novels, bolster a finding that the claimant functions with a borderline intellect and retains the mental ability to perform some unskilled work. Thus, the undersigned concludes that the claimant's allegations of pain and other limiting symptoms are credible only to the extent that they are consistent with the residual functional capacity.

(Tr. 21-22).

The ALJ concluded Plaintiff's subjective complaints, including pain, were not fully credible. Generally, a claimant's self-reported claims of disabling pain are not, standing alone, sufficient to establish disability. *See* 20 C.F.R. §§ 404.1529(a) and 416.929(a) (2006). First, such claims must be supported by objective medical evidence (*i.e.*, medical signs and/or laboratory findings) of an underlying medical condition and, second, either (1) the objective medical evidence must confirm the severity of the alleged pain, or (2) the objectively established medical condition must be of such a severity that it can be reasonably expected to produce the alleged pain. *Id.; Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). However, a plaintiff need not establish objective evidence of the pain itself. *Felisky*, 35 F.3d at 1039.

The intensity and persistence of the claimant's symptoms must be evaluated to determine whether those symptoms limit the claimant's capacity for work. 20 C.F.R. § 416.929(c)(1) (2006).

Relevant evidence for the ALJ's determination includes the claimant's medical history, statements by treating physicians, medications taken, medical treatment other than medication received to relieve pain or other symptoms, methods the claimant has used to relieve pain, precipitating and aggravating factors, daily activities, and statements by the claimant. 20 C.F.R. § 416.929(c). Ultimately, it is the functional limitations imposed by a condition rather than the diagnosis itself which determines whether an individual is disabled. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). Pain caused by an impairment can be disabling, but each individual has a different tolerance of pain. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 367 (6th Cir. 1984). Thus, a determination of disability based on pain depends in part on the credibility of the claimant. *Id.*; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 538 (6th Cir. 1981).

In determining credibility, the ALJ considers, among other things, whether there are any inconsistencies between the claimant's statements and the rest of the evidence. 20 C.F.R. § 416.929(c)(4) (2006). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony , and other evidence." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Because the ALJ is charged with the responsibility of observing the demeanor and credibility of the witness, his conclusions should be highly regarded. *Id.*; *Villarreal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987).

The record reflects the ALJ reasonably considered a variety of relevant factors in assessing the overall nature and severity of the limitations caused by Plaintiff's impairments, symptoms, and complaints of pain. The ALJ's specific reasons for his findings on credibility are well-grounded and substantial evidence supports his finding that the record lacked objective evidence to support the degree of limitation Plaintiff alleged. *See McCoy on behalf of McCoy v. Chater*, 81 F.3d 44, 47 (6th

Cir. 1995).

The ALJ found the evidence of record did not support Plaintiff's allegation his impairments resulted in pain of disabling severity, but found Plaintiff's impairments could reasonably be expected to cause some pain and discomfort (Tr. 22). The ALJ noted the evidence of record was inconsistent with disabling physical limitations as Plaintiff's hypertension and hyperlipidemia were well-controlled with medication; and, although Plaintiff had tenderness, soreness, and degenerative changes of the spine, objective findings on examination showed no neurological deficits, normal gait, and a normal straight leg raising test (*id.*). The ALJ also noted the consultative examiner, Dr. Page, opined that Plaintiff had no physical limitations and the state agency reviewing physician opined Plaintiff retained the RFC for medium work (*id.*). However, the ALJ considered the objective evidence of record as well as Plaintiff's subjective complaints of disabling pain and gave Plaintiff every benefit of the doubt and found his musculoskeletal disorders warrant a finding the Plaintiff's RFC was limited to sedentary work (*id.*).

Accordingly, I **CONCLUDE** the ALJ did not err in his evaluation of the Plaintiff's subjective complaints.

**C.     *Step Five – Testimony of the VE***

Plaintiff briefly asserts the ALJ's hypothetical question to the VE was flawed because "[i]t is impossible to determine what limitations, if any, the [VE] opined would be associated with a limited education and borderline IQ scores." [Doc. 9 at 9]. In response, the Commissioner cryptically counters "to the extent that Plaintiff had any limitations from his mental impairments, the hypothetical question posed to the VE accurately reflected all the limitations that the ALJ found credible, and, therefore Plainitff's contention is unavailing." [Doc. 12 at 16].

If a plaintiff is unable to perform any past relevant work, the Commissioner has the burden

of establishing the plaintiff is capable of performing other work which exists in significant numbers in the national economy. *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 771 (6th Cir. 1987). If the Commissioner cannot rely on the grids to meet this burden, as here, a vocational expert may testify as to the availability of jobs which a claimant can perform. *See Born v. Sec'y of Health and Human Servs.*, 923 F.2d 1168, 1174 (6th Cir. 1990). The testimony of a vocational expert can constitute substantial evidence to support the ALJ's finding that the Plaintiff retains the RFC to perform a significant number of jobs existing in the regional and national economy, but only if the hypothetical question accurately portrays the plaintiff's physical and mental impairments. *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002); *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987); *Bradford v. Sec'y of Dep't of Health and Human Servs.*, 803 F.2d 871, 874 (6th Cir. 1986) (per curiam). A response to a flawed hypothetical question is not substantial evidence and cannot support a finding work exists which a plaintiff can perform. *Parent v. Comm'r of Soc. Sec.*, No. 07-cv-12111, 2008 WL 1795019, *5 (E.D. Mich. Apr. 18, 2008). The hypothetical question "must state with precision the physical and mental impairments of the claimant." *Id.* at n.1 (citing *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975)). Significantly, a vocational expert exceeds the scope of his expertise where he gives testimony based solely on a list of impairments identified by the ALJ, because a vocational expert is not a medical doctor and cannot make medical judgments. *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 247 (6th Cir. 1987); *Cook v. Heckler*, 739 F.2d 396, 399 (8th Cir. 1984).

In a recent case, *Conley v. Astrue*, No. 3:07-1080, 2009 WL 334644 (M.D. Tenn. Feb. 9, 2009), a magistrate judge found the ALJ's hypothetical to a vocational expert did not accurately portray the Plaintiff's limitations, and held the:

functional limitation to unskilled, entry-level work should have been made explicit in the ALJ's questioning of the vocational expert, but was not; instead, the ALJ merely advised of plaintiff's educational level, . . . and instructed the expert "to assume that there are no mental health related limitations." This was insufficient. All credible limitations resulting from a claimant's impairments must be included in the ALJ's hypothetical to the vocational expert, in order for the resulting expert testimony to be reliable. *E.g., Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). Even had the vocational expert answered the ALJ's hypothetical . . . by identifying only unskilled jobs, in keeping with the implicit requirement of unskilled work for a person with a limited or marginal education, . . . it would not render harmless the ALJ's failure to include all substantially supported limitations in his hypothetical to the expert . . . .

*Id.* at *13.[2]

In the instant matter, the ALJ's hypothetical question posed to the VE identified a younger individual with a limited education and psychological testing which resulted in a verbal IQ score of 75, a performance IQ of 71, an overall IQ of 76 and the physical capacity to perform sedentary work (Tr. 374). In response, the VE identified jobs such a hypothetical individual could perform, including hand packager, sorter, assembler, and inspector (*id.*). In his decision, however, the ALJ found that Plaintiff retained the mental ability to perform only "*some* unskilled work" and had a borderline intellect (Tr. 22) (emphasis added). In addition to concluding the Plaintiff had a limited education and a borderline intellect, the ALJ found Plaintiff had "moderate limitations" in concentration, persistence, and pace and had a "mild limitation in social functioning." (Tr. 23). Although the ALJ asked the VE to assume a younger individual with a limited education and set forth Plaintiff's IQ scores, the ALJ never asked the VE to assume such an individual had a borderline intellect, moderate limitations in concentration, persistence, and pace, and mild limitations in social functioning, which resulted in the RFC to perform something less than the full

---

[2] The district judge adopted the magistrate judge's report and recommendation after *de novo* review and remanded the matter for further administrative review.

range of unskilled work, *i.e.*, the mental ability to perform only "some" unskilled work. Because the ALJ's hypothetical did not accurately include all of the Plaintiff's credible mental limitations on his ability to work, I conclude the VE's testimony does not constitute substantial evidence in support of the ALJ's step-five determination that the Plaintiff retained the RFC to perform a significant number of jobs in the regional and national economies. *See Varley*, 820 F.2d at 779.

Accordingly, I **CONCLUDE** the decision of the Commissioner denying SSI benefits to Plaintiff is not supported by substantial evidence in the record. Therefore, I **RECOMMEND** the decision of the Commissioner denying SSI benefits to Plaintiff be **REVERSED** and, consistent with this report and recommendation, this matter be **REMANDED** to the Commissioner for further administrative consideration pursuant to sentence four of 42 U.S.C. § 405(g).

## Conclusion

Having carefully reviewed the administrative record and the briefs of the parties filed in support of their respective motions, for the reasons stated above it is **RECOMMENDED**[3]:

(1)      Plaintiff's motion for summary judgment [Doc. 8] be **GRANTED**;

(2)      Defendant's motion for summary judgment [Doc. 11] be **DENIED**;

(3)      Judgment be entered pursuant to Rule 58 of the Federal Rules of Civil Procedure **REVERSING** the Commissioner's decision which denied SSI benefits to the Plaintiff; and

---

[3] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

(4)     This matter be **REMANDED** to the Commissioner for further administrative

consideration, consistent with this report and recommendation, pursuant to sentence

four of 42 U.S.C. § 405(g).

s/*Susan K. Lee*_____
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE